Argued and submitted December 8, 1986, affirmed February 11, 1987

# CLAPP,
*Appellant,*

*v.*

# OREGONIAN PUBLISHING COMPANY, INC.,
*Respondent.*

## (A8401-00484; CA A38734)

732 P2d 928

William G. Whitney, Portland, argued the cause and filed the brief for appellant.

George L. Wagner, Portland, argued the cause for respondent. With him on the brief was Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this action against the Oregonian Publishing Company, alleging, *inter alia,* that it had induced him to purchase fixed term dealership contract rights by falsely representing that he would remain a dealer after the expiration of the contract. He also contended that defendant breached its promise of permanent employment.[1] The trial court granted summary judgment for defendant, because plaintiff had given deposition testimony fatal to both claims that was not overcome by his affidavit in opposition to summary judgment.[2]

Plaintiff's first claim for relief alleges that in June, 1982, he entered into negotiations with Peter Locascio, who had an exclusive dealership agreement with defendant for a geographic area in Vancouver, Washington, known as "Vancouver 2." The term of the contract was from April 1, 1982, through March 31, 1983. Plaintiff alleged that defendant represented that the dealership would be renewed as long as plaintiff performed satisfactorily as a dealer. At his deposition, however, plaintiff testified that defendant made no representations:

"Q. Before you completed your transaction to acquire Mr. Locascio's interest in Vancouver 2, did you have any conversations with Ron McDonald about the wisdom of your taking on the Vancouver dealership?

"A. No, not that I can recall.

"Q. Do you recall having any conversations on that subject with Ray Johnson before you completed your transaction with Mr. Locascio?

"A. Not that I can recall.

"Q. Do you recall having conversations with Pat Marlton on that subject before you completed your transaction with Mr. Locascio?

---

[1] This claim was pled in plaintiff's amended complaint as a tort. He alleges that he was fraudulently induced to provide defendant with certain business information in exchange for defendant's promise to employ him for the rest of his life. In his memorandum in opposition to summary judgment, plaintiff contends that the claim is for breach of contract. The correct characterization is not necessary to the resolution of this case.

[2] Plaintiff's complaint contains three claims for relief. On appeal he does not contest the judgment against him on the second claim.

"A. No, I have no recollections.

"Q. Do you recall having a conversation with anyone from the publishing company on that subject before you completed your transaction with Mr. Locascio?

"A. I just can't be sure. I wish I could be a hundred percent sure on it. I just can't. If there was anything said, it was — it would have been of such little importance that it doesn't ring a bell.

"* * * * *

"Q. Did anyone from the company ever guarantee you that you would get a contract with respect to Mr. Locascio's Vancouver 2 dealership after Mr. Locascio's contract rights expired?

"A. No, not at that time.

"Q. Did you ever go in and ask Pat Marlton to give you a guarantee in writing that if you acquired Mr. Locascio's contract rights, that when those contract rights expired, that the company would contract directly with you?

"A. No. These things were automatic type of things. Each year during your contract period, you would go in and sign a new contract and as long as you had done a good job, there would be no problems.

"* * * * *

"Q. The first paragraph says, in substance, doesn't it, that no one from the company had a telephone conversation with you remotely similar to the one referred to in your letter of June 16th to Peter?

"A. Right. Therefore, if that was the situation, then we were back at square one. As long as I do a good job, the contracts will just continue to be signed year after year as they already always had been.

"Q. As I understand your testimony, that wasn't based on something the company told you, that was just your experience in the past?

"A. Right."

On the basis of that testimony, the trial court granted summary judgment for defendant on plaintiff's first claim. In so doing, the court disregarded plaintiff's affidavit in opposition to summary judgment, which stated:

"1. After I had sent the letter of June 12, 1982, to Peter

Locascio indicating I would not go through with the purchase, I received a letter back from Robert Gillard, which is defendant's Exhibit #4. After I received the Gillard letter and before I told Locascio that I was willing to go through with the transaction, I talked to Ray Johnson, who would be my sales representative with the Oregonian if I purchased the Locascio dealership. When I talked to Johnson, Johnson was aware of my letter to Robert Gillard and the Gillard letter back. Johnson indicated to me that the Oregonian would renew my dealership annually as long as I did a good job and would never fail to renew the dealership as long as I performed satisfactorily. After receiving the letter from Gillard and the Johnson statement, I decided to go through with the Locascio purchase believing that things would be the same as they had been in the past and that dealerships would be automatically renewed as long as I performed satisfactorily.

"2. I have reviewed the quoted pages out of my deposition on pages 9 and 10 of the defendant's memorandum, and in answering those questions where I stated that no one from the company ever guaranteed me that the contract would be renewed, I answered those questions believing they were intended to refer to Mr. Gillard who we had been discussing in the deposition at that time, and that the question was related to the time when the Gillard letter was delivered to me."

The trial court held that, under the rule in *Henderson-Rubio v. May Dept. Stores,* 53 Or App 575, 632 P2d 1289 (1981), plaintiff could not create a genuine issue of fact by contradicting his own deposition testimony. The trial court stated:

"The affidavit is a specific attempt to contradict the deposition. It also is a veneer-thin effort to get around *Henderson-Rubio* by asserting that plaintiff was confused in his answers on deposition. However, plaintiff was very clearly asked and specifically denied that he talked to Ray Johnson prior to taking over Locascio's dealership. Plaintiff also clearly said that nobody from the company had promised continuity. The affidavit filed in this case does not adequately justify contradicting the deposition testimony. As *Perma Research and Dev. Co. v. Singer Co.,* 410 F2d 572, 578 (2 Cir 1969), comments, there is no point in having summary judgment proceedings if an issue of fact can be raised simply by submitting an affidavit contradicting prior testimony."

*Henderson-Rubio* holds that a party may not create a genuine issue of fact by submitting an affidavit contradicting

his prior deposition testimony. 53 Or App at 585. In *dicta,* however, the court indicated two exceptions to the rule: (1) when the affiant explains or adds to his deposition; and (2) when the affiant claims that he was confused when he gave the deposition testimony. 53 Or App at 584-85. Plaintiff contends that his affidavit falls into the latter category. We disagree.

In his deposition plaintiff did not at first unequivocally deny conversations with defendant's employes, and his affidavit contains a claim that he was confused when he gave the relevant deposition testimony. The claim of confusion has no factual predicate. The deposition questions were clear and understandable. In any event, plaintiff finally did unequivocally state that his belief that his dealership would be renewed was not based on anything defendant had told him. Plaintiff's affidavit does not create a genuine issue of fact when the deposition testimony reflects no confusion. *See Franks v. Nimmo,* 796 F2d 1230, 1237 (10th Cir 1986). The trial court properly granted summary judgment for defendant on this claim. Plaintiff's argument that the trial court's decision to disregard the affidavit constitutes a determination of fact is without merit. Plaintiff confuses credibility issues with the court's duty to ignore sham issues in determining the appropriateness of a summary judgment. *See Babrocky v. Jewel Food Co. & Retail Meatcutters,* 773 F2d 857, 861 (7th Cir 1985).[3]

Plaintiff's third claim for relief alleges that he was guaranteed permanent employment with defendant. At his deposition, however, he agreed that he was only guaranteed employment for two months:

"Q.  October 19, 1984, Mr. Clapp, do you recall a meeting in Mr. Marlton's office where he said to you that he was sick and tired of you threatening lawsuits against the company and harassing sales reps and employees and that he was agreeable to putting you on the payroll for a two month period of time to see if you could straighten out your problems with yourself and start treating company representatives in a reasonable, proper manner?

---

[3] Oregon's summary judgment rule (ORCP 47) is patterned on FRCP 56. Federal case law, therefore, is entitled to some weight. *Henderson-Rubio v. May Dept. Stores,* 53 Or App 575,3583 n 5, 632 P2d 1289 (1981).

"A.   I remember there was something to that effect there, I don't remember exactly how it was put but it was something to that effect.

"Q.   And Mr. Marlton said to you, did he not, sir, that at the end of that two month period, if you could show and prove to him that you could treat company representatives in a proper way and you could straighten out your personal problems, that he was willing to consider some other business transaction with you, but he wasn't ready or prepared to enter into any contract with you as a dealer or as an agent or anything else at that time?

"A.   I don't remember that taking place. I'm not saying it didn't happen, I'm saying I don't remember.

"Q.   Do you remember he said he was agreeable to putting you on the payroll at $2,000 a month for two months under those terms?

"A.   I remember that was the agreement he came up with at that time. Let me state something else. In walking into Pat's office and especially then, but even in the past, it's a matter of just saying yes. You don't argue with Pat Marlton. You just — he talks and you say yes. No matter what he says, you say yes. That's just the way it has always been."

Without explanation, plaintiff directly contradicts that testimony in his affidavit in opposition to summary judgment:

"13.   After my dealership was terminated, I agreed to work for the Oregonian and cooperate in turning over the subscriber lists and my employee lists. I also agreed to supervise the conversion to a dealership. I agreed because I was told that I was going to be hired on a permanent basis at the sum of $2,000 per month."

■ The trial court correctly granted summary judgment for defendant on this claim. Plaintiff cannot create a genuine issue of material fact by an affidavit that, without explanation, directly contradicts his deposition testimony. *Henderson-Rubio v. May Dept. Stores, supra,* 53 Or App at 585.

Affirmed.