Argued and submitted March 14, affirmed on appeal and on cross-appeal
August 1, 1990

## Gerald R. McCOY,
*Appellant - Cross-Respondent,*

*v.*

## UNION PACIFIC RAILROAD COMPANY,
*Respondent - Cross-Appellant.*

## (A8610-06049; CA A50380)

796 P2d 646

James N. Westwood, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Miller, Nash, Wiener, Hager & Carlsen, Portland, and Thomas M. Schneiger and Bricker, Zakovics & Querin, P.C., Portland.

Thomas W. Brown, Portland, argued the cause for respondent - cross-appellant. With him on the briefs was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff appeals from the judgment in this personal injury action under the Federal Employers' Liability Act (FELA), 45 USC §§ 51 *et seq,* assigning error to the trial court's granting, in part, defendant's motion for summary judgment. Defendant cross-appeals, assigning error to the court's failure to grant its motion for summary judgment in its entirety.

Plaintiff filed his complaint on October 8, 1986, alleging that he has suffered hearing loss and tinnitus arising out of his employment as a locomotive fireman and engineer as a result of defendant's negligence in failing to provide plaintiff with

"a safe place in which to work and safe tools and equipment in one or more of the following particulars:

"(a)  Defendant failed to warn plaintiff of the danger caused by exposure to loud noises emitted from its equipment;

"(b)  Defendant required plaintiff to work around retarders when it knew or should have known that the noise would cause damage to his ears;

"(c)  Defendant failed to inspect, discover and remedy the condition of the retarders which caused extremely loud noises to be emitted;

"(d)  Defendant failed to provide plaintiff with devices to protect his ears;

"(e)  Defendant failed to test plaintiff's hearing on a regular basis.

"(f)  Defendant ordered plaintiff not to wear hearing protection when it knew it [*sic*] he would be exposed to injurious noises on the job."

As an affirmative defense, defendant alleged that plaintiff had failed to bring this action within the time permitted by 45 USC § 56, which provides:

"No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."

Defendant filed a motion for summary judgment, asserting that the entire claim is barred by the statute. Plaintiff contended that no part of his claim is time-barred. The court granted the motion in substantial part, ruling that

"any and all of plaintiff's causes of action for tinnitus and hearing loss which accrued more than three years prior to the time of filing of plaintiff's complaint are barred * * *. It is further ordered any and all causes of action for tinnitus and hearing loss which accrued within three years prior to the time of filing of the complaint are allowed."

The case proceeded to trial on "causes of action that accrued within three years prior to the filing of the complaint." The jury returned a verdict for plaintiff, awarding general damages of $12,500 for aggravation of his condition.

Federal law controls the determination of when a claim "accrues" under 45 USC § 56. *Bailey v. Central Vermont R. Co.,* 319 US 350, 63 S Ct 1062, 87 L Ed 1444 (1943). In *Urie v. Thompson,* 337 US 163, 69 S Ct 1018, 93 L Ed 1282 (1949), the plaintiff had contended that his claim did not accrue until he became incapacitated; the defendant argued that it accrued when plaintiff was first exposed to the deleterious substance. The United States Supreme Court held that a claim under FELA accrues on discovery, which occurs when the employee is aware, or should be aware, of his injury. *Urie v. Thompson, supra,* 337 US at 170. In the case of an occupational disease, when the injurious consequences of the exposure occur over time rather than at a particular point in time and the exact moment of initial exposure is unknown or unknowable, the claim accrues when the accumulated effects of the deleterious substance manifest themselves.

In *United States v. Kubrick,* 444 US 1111, 100 S Ct 352, 62 L Ed 2d 259 (1979), in deciding the meaning of "accrue" as used in the Federal Tort Claims Act, 28 USC § 2401(b), the Court rejected the argument that the discovery rule requires knowledge that the acts causing the injury might constitute legally actionable conduct. 444 US at 1113. It concluded that it was unnecessary, for limitations purposes, that the plaintiff know that the defendant is legally blameworthy before an action accrues. It held that a claim accrues when the plaintiff knows both the existence and the cause of his injury, not at a later time when he also knows that the defendant's conduct constituted negligence.

Recently, federal courts have stated that a claim accrues under FELA when the plaintiff possesses sufficient critical facts from which the injury and its cause, including its

work-relatedness, should be plainly known. *DuBose v. Kansas City Southern Ry. Co.*, 729 F2d 1026 (5th Cir), *cert den* 469 US 854 (1984); *Jones v. Maine Cent. R. Co.*, 690 F Supp 73 (D Me 1988). Certain factors, such as whether the plaintiff had experienced disability, whether his condition had been medically diagnosed and whether off-the-job exposures could have contributed to the condition, are relevant to the question of whether the plaintiff had knowledge of the condition and its cause, *DuBose v. Kansas City Southern Ry. Co., supra,* 729 F2d at 1031, but none of those factors, alone, is determinative.

■ Ordinarily, the question of whether and when an employee knew or should have known that he had an occupational disease is one of fact for the jury. However, when the evidence is such that a reasonable factfinder could only answer the question one way, it is for the court to decide. Plaintiff contends that the evidence creates questions of fact as to when he first became aware that he had an "actionable disability" and when he first connected that condition with his work place. On review of a summary judgment, we view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to plaintiff.

In August, 1981, plaintiff was examined for defendant by Dr. Minogue as part of a routine medical examination. He reported at that time that he had no hearing difficulties, ringing or buzzing. Minogue reported that plaintiff's hearing was normal. When deposed, plaintiff testified that he was exposed to loud noises at work, including engine noise, whistles and radios. He testified that he went to see Dr. Petrusek in 1986 regarding his hearing. He further testified:

"Q: Had you noticed any problems with your hearing before going to see Dr. Petrusek?

"A: Yes.

"Q: When did you notice that problem?

"A: Six or seven — well, the last five, six or seven years it's been bothering me, yes.

"Q: And what did you relate that to?

"* * * * *

"A: * * * Loud noises.

"* * * * *

"Q: You relate the ringing and the hearing loss to the noise that you have been exposed to?

"A: Yes.

"Q: And did you think about consulting with some doctor related to that?

"A: Until I went to Dr. Petrusek, no.

"Q: Why is that?

"A: I didn't think it was that bad."

Questions and testimony followed concerning plaintiff's off-the-job use of rifles, shotguns and chain saws. On further questioning, he testified:

"Q: So, prior to six or seven years ago, whenever you would operate a rifle or shotgun you never noticed a ringing after that?

"A: No.

"Q: But six or seven years ago you started noticing a ringing?

"A: Yes.

"Q: And that would be after gun use?

"A: I had it all the time when I first noticed the ringing.

"* * * * *

"Q: What loud noises did you think were causing the problem back then?

"A: Six or seven years ago?

"Q: Yes.

"A: The ones I have already stated. The loud radios, the loud engines, loud whistles.

"Q: So six or seven years you related loud noises at work to your hearing problem; is that correct?

"A: When it first started coming on, yes.

"* * * * *

"Q: You mentioned earlier that you had this ringing about six or seven years ago and you also had the hearing problem about that same time and at that time you related it to loud noises; right?

"A: Right.

"Q: And the loud noises that you related it to were the loud noises at work?

"A: Yes.

"Q: And that is still your opinion?

"A: Yes."

■    Plaintiff's testimony is clear that he first noticed hearing problems five to seven years before the August, 1987, hearing and that, when he first noticed the problems, he believed that they were caused by loud noises at his employment. His contention that his testimony is ambiguous or that he was confused or forced by defendant's counsel to answer questions one way is not well taken.

Plaintiff contends that, in any event, a question of fact remains, because his testimony is contradicted by Minogue's examination report of August 19, 1981, which reveals that he did not complain of hearing problems and that he had no hearing problems at that time. That report, however, does not create a *material* question of fact. Even assuming that it is correct that plaintiff had no hearing difficulties in August, 1981, that evidence is not inconsistent with plaintiff's testimony that his problems developed five to seven years before August, 1987, or sometime between August, 1980, and August, 1982. Although the report might create a question of fact as to whether plaintiff's problems developed before August, 1981, it does not create a question of fact as to whether they developed before October, 1983, three years before he commenced this action.

Plaintiff contends, additionally, that there is an issue of fact as to when his condition was serious enough to cause a claim to accrue. Plaintiff testified that he did not go to a doctor for his hearing problems until February, 1986, because, before that time, his condition simply was not "bad enough." He likens his claim to one for workers' compensation in which a claim arises when a claimant experiences disability or seeks medical attention. *See Weller v. Union Carbide Corporation,* 288 Or 27, 602 P2d 259 (1979). The accrual of a claim under FELA, however, does not require that the plaintiff be disabled, according to the federal cases discussed above. Similarly, whether or not plaintiff's condition was bad enough to cause him to go to the doctor is irrelevant, if, as the evidence here shows, he knew of his condition and its cause.

Plaintiff also contends that a question of fact remains

as to when he became aware that the condition was work-related. The evidence shows that plaintiff was also exposed to off-the-job noises, including firearms and chain saws. When he first testified during his deposition regarding the cause of the hearing loss, he attributed it to "loud noises" and not specifically to loud noises at work. Later, however, he testified that work was the source of the hearing loss and that he was aware of that at the time he first became aware of the problems. Plaintiff's testimony, read in its entirety, is neither internally inconsistent nor inconsistent with any other evidence, and shows that plaintiff was aware no later than August, 1982, that he had a hearing problem that was caused by loud noises related to his employment. His failure to file his complaint within three years of that date is fatal to his claim.

■ ■  Plaintiff argues that his claim is one for "negligent assignment to hazardous work" and that he is entitled to recover for damages sustained while he was working in an unsafe environment until he was relieved of the injurious work exposure. He argues that the Statute of Limitations was tolled during the entire time when he was exposed to the unsafe conditions. Even assuming the validity of the concept of "negligent assignment," we conclude that neither the complaint nor the evidence supports recovery on that theory. It appears, in those cases that have discussed the question, that a material component of a claim for negligent assignment is that the defendant either made or continued the worker's injurious job assignment with knowledge of the worker's injury and its relationship to the employment. *See Kichline v. Consolidated Rail Corp.*, 800 F2d 356, 361 (3rd Cir 1986); *Emmons v. Southern Pacific Transportation Co.*, 701 F2d 1112 (5th Cir 1983); *Fletcher v. Union Pac. R. Co.*, 621 F2d 902 (8th Cir 1980) *cert den* 449 US 1110 (1981); *Fowkes v. Pennsylvania Railroad Company*, 264 F2d 397 (3rd Cir 1959); *Corrigan v. Burlington Northern R.R., Inc.*, 612 F Supp 665 (D Minn 1985). That is not the case here. The trial court properly rejected plaintiff's contention that he is entitled to recover on a theory of negligent assignment.

■  The trial court denied defendant's motion for summary judgment in part, concluding that "any and all causes of action for tinnitus and hearing loss which accrued within three years prior to the time of filing of the complaint are allowed." In its cross-appeal, defendant contends that the

trial court erred in failing to grant its motion for summary judgment in its entirety and in ruling that plaintiff could recover damages for the worsening of his condition after October, 1983.[1]

The apparent theory of the trial court, although not articulated, is that, if plaintiff could show that his condition worsened as a result of the loud noises to which he continued to be exposed at work during the three years immediately before he filed his complaint, he would be entitled to damages for the worsening that occurred during that limited period. That was how the case was tried, and defendant does not contend that plaintiff's evidence was insufficient or that the instructions were erroneous. It contends, simply, that, once the Statute of Limitations had run on plaintiff's original claim, he was barred from *all* relief, even though defendant's continuing negligence caused him additional harm.

We perceive no reason why plaintiff must be denied all relief if his hearing loss became worse because of his work exposure during the three years preceding the filing of this action. If, for example, hearing loss had originated before he commenced work for defendant, and he then worked for defendant for three years, during which time loud noises at work increased his loss, we believe that plaintiff would be entitled to recover for the aggravation of his condition, if he filed his action timely. That situation would be analogous to a plaintiff who had a preexisting back problem that was aggravated as a result of an automobile accident.

Defendant relies on language in *Urie v. Thompson, supra,* that, taken at face value, might preclude plaintiff's recovery for the worsening. The context in which that language was used, however, persuades us that the Court did not intend to preclude this kind of a claim. In *Urie,* the plaintiff filed his FELA complaint in November, 1941, alleging that he had contracted silicosis as a result of his exposure to silica dust at work since about 1910. The defendant argued that the plaintiff must have contracted the disease long before the

---

[1] Defendant does not argue that plaintiff could not proceed to trial on the worsening of his condition during the three years before filing his complaint because plaintiff had not pleaded a claim on that theory.

Statute of Limitations had run, so his claim was barred. Alternatively, the defendant argued that each inhalation of dust was a separate tort giving rise to a "fresh" cause of action; therefore, the plaintiff was limited to a claim for inhalation between November, 1938, and May, 1940, when he became incapacitated and ceased work.

The Court said that "neither of the outlined constructions of the Statute of Limitations can be sustained." 337 US at 169. It explained:

> "For, if we assume that Congress intended to include occupational diseases in the category of injuries compensable under the Federal Employers' Liability and Boiler Inspection Acts, such mechanical analysis of the 'accrual' of petitioner's injury—whether breath by breath, or at one unrecorded moment in the progress of the disease—can only serve to thwart the congressional purpose.
>
> "If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability." *Urie v. Thompson, supra,* 337 US at 169.

It went on to say:

> "Nor can we accept the theory that each intake of dusty breath is a fresh 'cause of action.' In the present case, for example, application of such a rule would, arguably, limit petitioner's damages to that aggravation of his progressive injury traceable to the last eighteen months of his employment. Moreover, petitioner would have been wholly barred from suit had he left the railroad, or merely been transferred to work involving no exposure to silica dust, more than three years before discovering the disease with which he was afflicted." 337 US at 170.

Instead, the Court held that the plaintiff's claim accrued when he discovered his problem and its cause, which, in that case, the evidence showed was not until he became

incapacitated within the three year Statute of Limitations period. It seems clear that the Court rejected the proposition that each intake of dust created a fresh cause of action for the purpose of the limitation, because it would have imposed an unintended *restriction* on the relief to which the plaintiff was entitled when he did not discover his illness until May, 1940.

That is not this case. Here, plaintiff discovered his problem and its cause no later than 1982 but failed to file his action within the limitation period; nevertheless, he continued to be damaged until he filed this action. Although he is not entitled to recover for all of his hearing loss, there is no reason why he should be barred from recovering for the loss that occurred within the three years preceding his commencement of this action. The court in *Kichline v. Consolidated Rail Corp., supra,* reached the same conclusion.

Affirmed on appeal and on cross-appeal.