Argued and submitted February 11, reversed and remanded April 10, 1991

Arlan W. TAAL,
*Appellant,*

*v.*

UNION PACIFIC RAILROAD COMPANY,
*Respondent.*

(A8811-05958; CA A64279)

809 P2d 104

James N. Westwood, Portland, argued the cause for appellant. With him on the briefs were Miller, Nash, Wiener, Hager & Carlsen, Thomas M. Schneiger and Bricker, Zakovics & Querin, P.C., Portland.

Thomas W. Brown, Portland, argued the cause for respondent. With him on the brief was Cosgrave, Vergeer & Kester, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff, a railroad worker, brought this action against his employer under the Federal Employers' Liability Act (FELA), 45 USC § 51 *et seq*, alleging that he suffers the occupational diseases of hearing loss and tinnitus. The complaint was filed on November 1, 1988. Defendant moved for summary judgment on the ground that the action is barred by the three-year limitation period of 45 USC § 56. The trial court granted the motion, and plaintiff appeals from the resulting judgment. We reverse and remand.

The issue is whether the evidence in the summary judgment proceeding leaves a material factual question as to whether plaintiff knew or should have known "the condition and its cause" before November 1, 1985. *See McCoy v. Union Pacific Railroad Co.*, 102 Or App 620, 623-24, 796 P2d 646 (1990), and authorities there cited. Defendant relied on a recorded interview with plaintiff by its claims agent, which took place in February, 1988. Plaintiff told the agent that he first noticed a hearing problem "in the middle of 1985," which he later explained, in response to the agent's question, meant "June, July or August, somewhere around there. I don't know exactly."

Plaintiff submitted his deposition, taken approximately one year after the interview with the agent, and contends that it created a material factual question and would support a finding that his discovery of the problem occurred after November 1, 1985. We quote from the deposition:

"Q. [By defendant's attorney] And in that statement [to the agent] it indicated that you first noticed a hearing problem in either June or July or August of 1985.

"A. [By plaintiff] Yes.

"Q. Did you indicate that at that time?

"A. At that time I did.

"Q. Are you telling me that that's not correct now or —

"A. That's correct, that's not correct.

"Q. That's not correct?

"A. Right.

"Q. And why do you say that?

"A. I looked at the doctor's statement.

"Q. Which doctor's statement?

"A. [Joseph] Petrusek

"Q. And what was it about Petrusek's statement that suggested that earlier statement about when you first noticed your hearing problem was incorrect?

"A. The date.

"* * * * *

"Q. Why did you conclude that it was not correct?

"A. The date that I took the examination.

"Q. So you concluded from looking at Dr. Petrusek's chart note, which shows that you saw him on November 7th, 1985, that the date of June, July or August of 1985 was not correct?

"A. That's right.

"* * * * *

"Q. When did you first notice a problem with your hearing?

"A. I don't know. Probably November 5th or 6th of '85.

"Q. And what brought it to your attention at that time?

"A. I was outside at my sister's place and she left and went to the house and I asked her why and she said the phone was ringing.

"* * * * *

"Q. And this was on the 5th?

"A. 5th or 6th, I don't exactly — one or the other of those days.

"* * * * *

"Q. And then what happened?

"A. Well, the more I thought about it, I thought maybe I better do something, find out if I did have a problem, so I contacted Dr. Petrusek and had an examination the next day or so.

"Q. So you were able to schedule an examination with him on a day's advance notice? You hadn't scheduled that before?

"A. I don't remember. It wasn't very long.

"* * * * *

"Q. * * * And you never asked that another doctor refer you

to Dr. Petrusek so that you could have yourself examined for a hearing problem?

"A. Dr. Kubler.

"Q. Oh, you did ask him to do that?

"A. Yeah.

"Q. And when did you ask him to do that?

"A. The day that I made the appointment [with Petrusek], somewhere around in that area there.

"* * * * *

"Q. So it would have been either November 5th or 6th that you went in to see Dr. Kubler? Or did you go in to see him?

"A. I don't remember, I don't remember exactly.

"* * * * *

"Q. * * * But in any event, when you did talk to Dr. Kubler, it was at that time that you wanted to have yourself tested because you felt you had a hearing problem at that time; is that correct?

"* * * * *

"A. That's the reason I talked to him.

"* * * * *

"Q. Mr. Taal, I just want to find out how sure you are as to when you talked to Dr. Kubler. And assume we find a record that shows that you talked to him about this hearing problem prior to November of 1985, would you have any strong dispute with that?

"A. No."

The parties stipulated at the hearing that plaintiff consulted Kubler before the end of October, 1985.

Defendant argues that, under *Clapp v. Oregonian Publishing Company,* 83 Or App 575, 732 P2d 928 (1987), and *Henderson-Rubio v. May Dept. Stores,* 53 Or App 575, 632 P2d 1289 (1981), plaintiff could not create a genuine issue of fact simply by using his deposition to contradict his earlier statements to the agent. Plaintiff relies on *Cope v. Western American Ins. Co.,* 95 Or App 114, 768 P2d 410 (1989), *aff'd* 309 Or 232, 785 P2d 1050 (1990), where we said:

"In *Henderson-Rubio,* the plaintiff was repeatedly asked during deposition to state the basis for his overtime wage claim.

He specifically stated that it was based on his understanding of federal wage law, but that he was not aware of any company policy regarding the matter. After the employer filed a motion for summary judgment, the plaintiff filed an affidavit asserting that the employer had a policy regarding overtime wages. We held in that case that such an affidavit could not create a genuine issue of fact. However, we limited the case to its facts:

> " 'This is not a case where plaintiff's affidavit explains or adds to his deposition; neither does he claim that he was confused at the time of his deposition. Plaintiff's affidavit directly conflicts with his deposition testimony. He made no attempt to explain this inconsistency.' 53 Or App at 585.

"We explained further in a footnote:

> " 'Not all discrepancies contained in an affidavit justify a court's refusal to give credence to such evidence. *Our decision is limited to the facts of this and similar cases, where the two statements are clearly inconsistent and no attempt is made to explain the inconsistency.*' 53 Or App at 585 n 6. (Citations omitted; emphasis supplied.)

> "In this case, plaintiff did offer an explanation for the inconsistency between her deposition testimony and the assertions made in her affidavit." 95 Or App at 119.

*See also Georges v. Severson,* 94 Or App 41, 764 P2d 586 (1988).

Similarly, here, plaintiff's deposition does offer an explanation for the inconsistency. Plaintiff stated that his earlier recollection of June, July or August as the time of discovery was corrected by his seeing in the chart notes that he did not consult Petrusek until November. Inferentially, his point is that he now recalls discovering the condition at or around the time that he saw Petrusek and that his prior remembrance of an earlier date was wrong.

Defendant argues, in essence, that plaintiff's explanation is unbelievable and a "sham." Defendant points out, in particular, that plaintiff told the claims agent in the interview that he had seen Petrusek in November, 1985. Therefore, his later reading of Petrusek's note could not have changed any recollections that he had at the time of the interview. Defendant analogizes the situation to *Clapp v. Oregonian Publishing Company, supra,* where we said:

> "In his deposition plaintiff did not at first unequivocally

deny conversations with defendant's employes, and his affidavit contains a claim that he was confused when he gave the relevant deposition testimony. The claim of confusion has no factual predicate. The deposition questions were clear and understandable. In any event, plaintiff finally did unequivocally state that his belief that his dealership would be renewed was not based on anything defendant had told him. Plaintiff's affidavit does not create a genuine issue of fact when the deposition testimony reflects no confusion. The trial court properly granted summary judgment for defendant on this claim. Plaintiff's argument that the trial court's decision to disregard the affidavit constitutes a determination of fact is without merit. Plaintiff confuses credibility issues with the court's duty to ignore sham issues in determining the appropriateness of a summary judgment." 83 Or App at 580. (Citations omitted.)

 We now disapprove that idea. The line between credibility questions and "sham" assertions of facts is non-existent. Credibility questions are for the fact finder; they are not for the court to resolve in dealing with contradictory evidence in a summary judgment setting. As stated in *Henderson-Rubio v. May Dept. Stores, supra,* 53 Or App at 585, the rule is that a later sworn statement cannot create a question of fact by contradicting an earlier one on a factual issue *if* the inconsistency is not explained or if there was no confusion at the time of the earlier statement. When there is an explanation or a protestation of confusion, it is not within the province of the trial court or us to disbelieve it for purposes of a summary judgment motion. There is no reason why contradictory evidence from the same party or witness is less capable than inconsistent evidence from separate sources to create a disputed fact question. It is the fact finder's role to decide which is true.

 For the same reason, we reject defendant's argument that the deposition itself shows that plaintiff discovered his condition, at the latest, when he saw Kubler in October, 1985. That evidence may be in conflict with plaintiff's statements in the deposition that he first discovered his hearing problems on November 5 or 6, when he could not hear the telephone ring, or when he consulted Petrusek on November 7. Assuming that there is a conflict, it also is for the trier of fact to resolve. Plaintiff's deposition raises genuine issues of material fact as to when the discovery of his condition occurred, and the court

erred by granting summary judgment. *See McCoy v. Union Pacific Railroad Co., supra,* 102 Or App at 624.

Plaintiff also argues that the court erred by rejecting his theory that the limitations issue—and possibly the liability issue—in this case is subject to the "negligent assignment" doctrine. *See McCoy v. Union Pacific Railroad Co., supra,* 102 Or App at 627, and authorities there cited. Because the issue may arise on remand, we address it. Plaintiff's argument is adversely answered by *McCoy,* 102 Or App at 627.

Reversed and remanded.