Argued and submitted June 10, affirmed August 24, 1981

HENDERSON-RUBIO,
*Appellant,*

*v.*

THE MAY DEPARTMENT STORES COMPANY,
dba Meier & Frank Co.,
*Respondent.*

(No. A7911-05423, CA 19073)

632 P2d 1289

Paul J. Kelly, Jr., Portland, argued the cause for appellant. With him on the brief was Glasgow, LaBarre & Kelly, P. C., Portland.

Bruce A. Rubin, Portland, argued the cause for respondent. With him on the brief was Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an action to recover unpaid wages. Plaintiff was employed by defendant in its retail department store located in Salem from August 11, 1974, through November 15, 1977. He brought this action claiming that, at the time his employment with defendant terminated, defendant owed him $796.25 in unpaid compensation. He also sought to recover $1,950 in penalty wages pursuant to ORS 652.150.[1] Defendant admitted the fact of plaintiff's employment but claimed that all sums due plaintiff as compensation had been timely paid. After discovery was had by both parties, defendant moved for summary judgment. The trial court granted defendant's motion, and plaintiff appeals from the resulting judgment. We affirm.

The record in this case is small but somewhat confusing. Boiled down to its essentials, however, it may be summarized as follows:

Plaintiff claims unpaid compensation for either compensatory time off or for unpaid vacation leave, or both, earned during September and October, 1977. Defendant claims to have paid plaintiff all money to which he is entitled. Defendant moved for summary judgment based upon three factors:

1. The affidavit of Lynn Mullen, an employe of defendant and personnel director of the Salem store. Mullen's affidavit established that plaintiff had been promoted to an executive position with defendant, at a salary in excess of $650 per month, prior to September, 1977. Plaintiff was not paid on an hourly basis. The affidavit further stated:

"No executive is entitled to collect overtime on an hourly basis or any other basis for work in excess of an

---

[1] ORS 652.150 provides that:

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued."

eight hour day or a 40 hour week. There are certain policies for compensatory time applicable to executives for work performed during the five weeks before Christmas (for which plaintiff has been paid); however, there is absolutely no policy, in writing or otherwise, permitting executives to collect 'overtime' or 'compensatory time' for work in September or October exceeding eight hours per day or 40 hours per week."

2. Excerpts from plaintiff's deposition. In his deposition, plaintiff stated that he is claiming 12.25 days in compensatory time for overtime worked during September and October, 1977. Under questioning by defendant's counsel, plaintiff conceded that he is not claiming compensation for any other period. Plaintiff testified that he never saw any written company policy with respect to compensatory time and was not informed of any policy. He stated that his claim was based on his own understanding that the law requires employers to pay their employes overtime for any time worked beyond eight hours a day or 40 hours a week. When questioned further, plaintiff changed his position slightly, stating that his claim for wages owed could be for vacation pay instead of compensatory time. He indicated that he was unable to tell from his records just exactly what was unpaid. Specifically, plaintiff testified:

"Q. [BY DEFENDANT'S COUNSEL] what is your understanding of the rules governing compensatory time?

"A. [BY PLAINTIFF] I was never really informed of any that did exist within the company.

"Q. Did you ever see anything in writing concerning compensatory time?

"A. No, I have not.

"Q. Then on what basis are you making a claim for compensatory time?

"A. Basically it's my understanding that most people, when you are hired to work a year, you are hired to work 2,080 hours, that is basically one year. You break that down into 40 hours a week, that is a work week. You break that down to eight hours a day, that's a work day. Any time over that to me is what I am claiming.

"Q. Did anyone ever tell you that you would be entitled to any extra pay for over 2,080 hours per year?

"A. No one ever said I would, no one ever said I wouldn't.

"Q. How do you reach the figure 2,080?

"A. I believe that it is some type of a Federal Wage and Price standard, some type of federal regulation somewhere."

In response to defendant's motion for summary judgment and, more specifically, in response to defendant's theory—based upon plaintiff's own deposition—that plaintiff had no contractual basis for claiming compensatory time, plaintiff filed an affidavit. That affidavit stated, in pertinent part:

"As part of its regular business practice, defendant conducted what was referred to as a 'ramp sale' each fall at its Salem store where I was employed. In order to prepare for that ramp sale, certain employees, including myself in the fall of 1977, had to work extemely long hours. It was then the practice of defendant to allow such employees compensatory time off for the overtime worked in preparation for the ramp sale. During the later part of September and the month of October, 1977, I worked a total of 98.5 hours in excess of my regular 8-hour per day work shift. These hours are reflected in Exhibit 13 of my deposition taken by defendant and referred to in its motion for summary judgment.

"On or about November 4, 1977, shortly before I terminated my employment with defendant, I discussed with my supervisor, Millard MacAtee, the pay which I felt I should receive at the time of my termination. I advised Mr. MacAtee that I believed that I was entitled to pay for the compensatory time reflected in deposition Exhibit 13, which I had not had the opportunity to take, and for two weeks accrued vacation. During that conversation, Mr. MacAtee said specifically or by his statements left me with the clear understanding that I would be paid for the comp time and vacation time. However, shortly thereafter when I picked up my severance paycheck, I learned that I had not been paid for the two weeks vacation and the 12.3 days of compensatory time accrued. It was my understanding at that time that defendant's position was that I was not entitled to the vacation pay. It was my understanding, based upon the statements and actions of defendant at my termination, that the severance check I received covered the compensatory time I requested.

"Since my termination I have learned, primarily through a letter from Charles E. Gallagher, Vice President, Personnel, of defendant (deposition Exhibit 15) that defendant claims that my severance pay in fact included

one week of vacation and three days of compensatory time. Due to the apparent vacillation in defendant's position as to whether it had paid me for accrued vacation or for unused compensatory time, I became uncertain as to whether I was in fact paid back pay for accrued vacation or unused compensatory time. In any event, defendant has failed to pay me the full amount due for combined compensatory and vacation pay."

The letter referred to in plaintiff's affidavit is a letter from one of defendant's vice presidents to plaintiff's counsel. That letter stated, in pertinent part:

"The company vacation policy provides for 1 week vacation after 1 year and 2 weeks after 2 years, 3 weeks after 9 years and 4 weeks after 15 years. Vacations in the first 2 years are to be paid for after the anniversary date of employment, even though taken earlier in the year. In all subsequent years vacation is earned and payable as of the first day of the year. Thus, Mr. Rubio was eligible for 2 weeks vacation during the calendar year 1977, available any time after January 1, 1977. In addition to vacation earned, supervisory employees are entitled to one week's compensatory time off for extra hours worked during the Christmas season.

"Mr. Rubio received paid time off for one week in February 1977 - one day in October 1977, plus one full week in October 1977 and 7 days at the time of resignation from the company. Mr. Rubio agrees to all of this. His contention is that as of the anniversary date of employment as a regular, August 11, 1977, he was entitled to an additional 2 weeks vacation. This is contrary to our policy as applied to Meier & Frank employees. To summarize, in 1977 Mr. Rubio receive paid time off as follows:

| "Compensatory time | 1 | week - February 1977 |
| "Vacation | 1 | week - October |
| | 1 | week - on resignation |
| | 3 | additional days for compensatory time." |

Based upon the foregoing information, the trial judge granted summary judgment for defendant.

On appeal, plaintiff contends that the trial court erred in granting the summary judgment because the evidence before the trial court demonstrates the existence of an issue of fact. He claims that there are issues of fact as to

the existence and scope of defendant's policy for compensatory time and as to whether or not he received the full amount of compensatory or vacation time pay he was entitled to receive. Plaintiff further contends that, in reviewing defendant's motion, this court should limit its review to the facts established by the parties' admissions and the sworn affidavits and should not consider the unsworn and unverified excerpts from his deposition. Defendant contends that plaintiff's deposition was properly before the trial court and is part of the record on appeal. It argues that plaintiff's deposition, inasmuch as it reveals that plaintiff's claim for compensatory time is based on his own understanding and not a contractual agreement between plaintiff and defendant, demonstrates that no triable issue of fact exists. In defendant's view, plaintiff's affidavit, which contradicts his deposition, cannot be used to create a genuine issue of fact.

We turn first to the question of whether the excerpts from plaintiff's deposition were properly part of the record before the trial court and therefore are part of the record on appeal. Plaintiff relies on this court's opinion in *McIntire v. First Far West Life Ins.*, 49 Or App 253, 619 P2d 1300 (1980). In that case the defendant's motion for summary judgment was supported by medical records and reports which were neither sworn to nor otherwise certified. We noted that there were no affidavits, depositions or admissions on file. Given the state of the record, we concluded that there was "* * * nothing before the court on which it could base a summary judgment. * * *" 49 Or App at 225.

■ Contrary to plaintiff's contention, *McIntire* does not stand for the proposition that excerpts from depositions, which on their face are unsworn and unverified, cannot be used to support a motion for summary judgment. ORCP 47 C provides that a motion for summary judgment shall be rendered if the "pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The rule mandates the form of affidavits but does not discuss the requirements for depositions. *See* ORCP 47 D. However, ORCP 39, relating to discovery, sets forth the

requirement for certification of depositions. *See* ORCP 39 G (1).[2] The depositions used in support of a party's motion for summary judgment are depositions that have been taken in accordance with ORCP 39.[3] There is no prohibition against using excerpts from these depositions.[4] We conclude that it was properly part of the record before the trial court and is part of the record on appeal.

■ ■    In reviewing a motion for summary judgment, the record is viewed in the light most favorable to the party opposing the motion. The moving party has the burden of showing that there are no genuine issues of material fact and that that party is entitled to judgment as a matter of law. *Seeborg v. General Motor Corporations,* 284 Or 695, 699, 588 P2d 1100 (1978).

■    In this case plaintiff claims that the defendant owes him unpaid compensation in the form of vacation or compensatory overtime pay. Plaintiff is not entitled to this sum unless he can establish a contractual basis for his recovery. *Wheeler v. Mission Elec. & Plumb.,* 267 Or 209, 515 P2d 1323 (1973). From an examinion of the record before us, it is clear that the plaintiff was entitled to at least some vacation time and some compensatory time. The questions are how much, for what period, and did plaintiff received all compensation that was due him? Plaintiff claims that he did not receive the full amount due for

---

[2] ORCP 39(G)(1) provides:

"When a deposition is stenographically taken, the stenographic reporter shall certify, under oath, on the transcript that the witness was sworn in the reporter's presence and that the transcript is a true record of the testimony given by the witness. When a deposition is recorded by other than stenographic means as provided in subsection C.(4) of this rule, and thereafter transcribed, the person transcribing it shall certify, under oath, on the transcript that such person heard the witness sworn on the recording and that the transcript is a correct transcription of the recording. When a recording or a non-stenographic deposition or a transcription of such recording or non-stenographic deposition is to be used at any proceeding in the action or is filed with the court, the party taking the deposition, or such party's attorney, shall certify under oath that the recording, either filed or furnished to the person making the transcription, is a true, complete, and accurate recording of the deposition of the witness and that the recording has not been altered."

[3] *See* 6 *Moore's Federal Practice,* § 56.11 [1-3], 200 (2d Ed).

[4] In two recent cases we relied on such excerpts to reverse a trial court's order granting summary judgment. *See Paulsen v. Continental Porsche Audi,* 49 Or App 793, 620 P2d 1384 (1980); *White v. Gurnsey,* 48 Or App 931, 618 P2d 975 (1980).

accrued vacation time and/or the amount due for extra hours worked during September and October. However, plaintiff admits in his deposition that the basis for his claim of overtime compensation is his own understanding of the law. Thus, plaintiff defeats his own claim with respect to compensatory time. He then contradicts this statement in his affidavit and contends that his claim is based on store policy. Defendant denies that such a policy exists; therefore, a factual dispute exists. It exists, however, only because plaintiff himself has created an issue by contradicting his earlier statement. Is a contradiction created by the opposing party sufficient to raise a genuine issue of material fact?

A number of federal courts have considered the issue before us in the context of the federal summary judgment rule.[5] In *Radobenko v. Automated Equipment Corporation,* 520 F2d 540 (9th Cir 1975), the court held that where a party creates his own issue of fact by an affidavit contradicting his prior deposition testimony, no genuine issue of fact is raised. In that case, plaintiff denied certain facts which, in his deposition, he testified to as true. The court stated:

> "The very object of summary judgment is to separate real and genuine issues from those that are formal or pretended, so that only the former may subject the moving party to the burden of trial. * * *. Here we are convinced that the issues of fact created by Radobenko are not issues which this Court could reasonably characterize as genuine; rather, they are sham issues which should not subject the defendants to the burden of trial." (Citations omitted.) 520 F2d at 544.

Quoting from *Perma Research & Development Co. v. Singer Co.,* 410 F2d 572, 578 (2d Cir 1969), the court then said:

> " '[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " 520 F2d at 544.

---

[5] The Oregon rule is patterned after Rule 56 of the Federal Rules of Civil Procedure. Therefore, federal decisions in this area are entitled to great weight. *Taylor v. Baker,* 279 Or 139, 141-142, n 2, 566 P2d 884 (1977).

In *Perma Research,* the plaintiff brought an action for breach of contract based on fraud against the defendant. During four days of deposition plaintiff was repeatedly asked to specify the basis of his claim. He made no reference to a conversation between him and the defendant which supported his claim of fraud until he submitted an affidavit opposing defendant's motion for summary judgment. Noting that this was not a case of newly discovered evidence nor a case where the party opposing the motion did not have access to the material facts, the court held that plaintiff's contradicting affidavit failed to raise any genuine issues of fact. *Perma Research & Development Co. v. Singer Co., supra,* 410 F2d at 578.

In contrast to the opinions in *Radobenko* and *Perma Research,* the Fifth Circuit in *Kennett-Murray Corp. v. Bone,* 622 F2d 887, 893 (5th Cir 1980), announced its rule as follows:

"In considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *See, e.g., Camerlin v. New York Central R. Co.,* 199 F2d 698, 701 (1st Cir 1952); *Adams v. United States,* 392 F Supp 1272, 1274 (E.D. Wis. 1975). 'An opposing party's affidavit should be considered although it differs from or varies his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility.' 6 *Moore's Federal Practice* § 56-15[4], p 56-522 (2d Ed) (footnote omitted). *See generally Guarantee Insurance Agency Co. v. Mid-Continental Realty Corp.,* 57 F.R.D. 555, 563 (D.C.). Thus, a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition."

The Fifth Circuit then went on to distinguish *Radobenko* and *Perma Research.* The court noted that in both those cases the statements contained in the plaintiffs' affidavits were blatantly inconsistent with their depositions; thus, the issues raised by the contradictory affidavits were sham issues only. In *Kennett-Murray,* the defendant's affidavit in opposition to the motion for summary judgment was not inherently inconsistent with his earlier testimony. The affidavit did not purport to raise a new matter "but rather to explain certain aspects of his deposition testimony." 622 F2d at 894. Moreover, the defendant stated that he was

confused during the deposition and the affidavit explained his source of confusion. On that basis the court concluded that the concerns raised in *Radobenko* and *Perma Research* were not present in the case before it and therefore held that the defendant's affidavit properly raised a genuine issue of fact.

While agreeing with the general rule as stated in *Kennett-Murray*, we nevertheless conclude that plaintiff's affidavit in this case fails to raise a genuine issue of fact, at least insofar as it relates to defendant's policy on compensatory time. This is not a case where plaintiff's affidavit explains or adds to his deposition; neither does he claim that he was confused at the time of his deposition. Plaintiff's affidavit directly conflicts with his deposition testimony. He made no attempt to explain this inconsistency. On that basis we conclude that his affidavit does not raise any genuine issue of fact with respect to defendant's policy on compensatory time.[6]

A question still remains as to plaintiff's entitlement to vacation pay. Plaintiff stated in his deposition that he did not know if defendant owed him vacation or compensatory time. His affidavit with respect to this issue is not in conflict with his deposition. In fact, his affidavit clarifies his deposition. Plaintiff stated in his affidavit that he was entitled to two weeks accrued vacation time when his employment with defendant terminated. However, the Gallagher letter indicates that plaintiff was paid for all of the vacation time for which he was entitled to be paid on or before the date his employment ended. This conclusion is supported by the explanation of defendant's vacation policy, which plaintiff does not challenge. We conclude that plaintiff's only viable claim would have to be for compensatory time, not vacation time. We have already held that he has failed to show that there is an issue of material fact with respect to that claim. The trial judge correctly granted summary judgment to defendant.

Affirmed.

---

[6] Not all discrepancies contained in an affidavit justify a court's refusal to give credence to such evidence. *Kennett-Murray Corp. v. Bone, supra,* 622 F2d at 894. Our decision is limited to the facts of this and similar cases, where the two statements are clearly inconsistent and no attempt is made to explain the inconsistency.