Argued and submitted April 3, affirmed June 11, petition for review denied October 7, 1997 (326 Or 62)

TIMBER BY-PRODUCTS, INC.,
an Oregon corporation;
Jack Miner; Joan Miner;
and Laura Miner,
*Respondents,*

*v.*

Robert W. SLOAN
and Robert W. Sloan & Associates, P.C.,
an Oregon professional corporation,
*Appellants.*

(942047; CA A93612)

939 P2d 1177

John R. Barker argued the cause for appellants. With him on the briefs was Bittner, Barker & Hahs, P.C.

K. Patrick Neill argued the cause for respondents. With him on the brief was Hershner, Hunter, Andrews, Neill & Smith, LLP.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Plaintiffs brought suit against Robert W. Sloan, plaintiffs' certified public accountant, for his negligent tax advice.[1] The trial court granted plaintiffs' motion for summary judgment and denied defendant's motion. Defendant appeals, contending that plaintiffs' claim is time barred and that a genuine issue of material fact exists regarding his affirmative defense based on the statute of limitations. We affirm.

The facts are not disputed. Plaintiff Jack Miner is a stockholder of plaintiff Timber By-Products, Inc. (Timber), which is a subchapter S corporation engaged in the trucking business. In the spring of 1990, Timber's financial difficulties forced Miner to liquidate some of Timber's assets. Miner, who is not sophisticated about tax matters, asked Sloan whether selling some of Timber's trucking equipment would create tax liabilities. Sloan responded that it would not. Miner sold trucking equipment in 1990 and 1991. In March 1992, while preparing Timber's 1991 tax return, Sloan discovered that he had given Miner inaccurate advice: selling the trucking equipment had created a tax liability of approximately $80,000. On March 6, 1992, Sloan informed Miner that Timber's 1990 state and federal tax filings needed to be amended to reflect the taxable gain on the trucking equipment sales.

Miner then consulted another accountant, Tad Davies, to determine whether Sloan was correct that Timber owed an additional $80,000 in taxes. On March 12, 1992, Davies confirmed that Timber owed $80,000 in taxes because of the trucking equipment sales. Davies also informed Miner that there were personal tax implications from the sales, because of Timber's flow-through tax character as a subchapter S corporation.

On July 9, 1992, for the first time, Davies informed Miner that the 1990 and 1991 trucking equipment sales could have been structured to avoid the tax liabilities and that, in his opinion, Sloan had made "substantial errors" in

---

[1] Plaintiffs' complaint also named Sloan's accounting firm, Robert W. Sloan & Associates, P.C. We refer only to the individual defendant.

his advice to Miner. According to Davies, "those errors resulted in tax liability that could otherwise have been avoided."

In January 1993, plaintiffs gave Sloan notice of their claim, and the parties began settlement discussions regarding Sloan's liability. The parties were unable to reach a settlement, but agreed that they would treat plaintiffs' action as having commenced on March 22, 1994. When negotiations failed, plaintiffs filed their complaint alleging that Sloan's negligence caused them harm. Among other things, plaintiffs alleged that Sloan was negligent:

> "b. In failing to understand, account for and advise Plaintiffs regarding carry-over losses in excess of stock basis and the tax implications of same for tax years 1987-1991;
>
> "* * * * *
>
> "e. For tax years 1987-1991, in failing to understand and advise Plaintiffs of significant tax consequences of their personal and business decisions, most particularly relating to the sale or other action regarding the Plaintiffs' fleet of vehicles and related parts and the handling of cash distributions[.]"

Sloan moved for summary judgment on the ground that plaintiffs' complaint was time barred, because plaintiffs had actual knowledge of the substantial possibility of their claim before March 22, 1992, more than two years before their action was deemed to have commenced. Plaintiffs moved for summary judgment, claiming that they were entitled to summary judgment as a matter of law because they did not know before March 22, 1992, that the $80,000 tax liability could have been avoided. The trial court granted plaintiffs' motion, and denied Sloan's motion. According to the trial court,

> "[Miner] did not know whether these taxes were an injury (that is, whether anything could have been done to avoid the taxes) and more importantly he did not know nor should he have necessarily known that there was an injury and that it was caused by the negligent or intentional act of the defendant."

The court entered a stipulated judgment for plaintiffs in the amount of $100,000. Because Sloan appeals only the statute of limitations issue, the only question is whether plaintiffs knew or should have known of their claim before March 22, 1992.

We review appeals from summary judgments to determine whether the moving party is entitled to judgment as a matter of law and whether there is any genuine issue of material fact. ORCP 47 C; *Doe v. American Red Cross,* 322 Or 502, 505, 910 P2d 364 (1996); *Stevens v. Bispham,* 316 Or 221, 223, 851 P2d 556 (1993). We review the evidence in the light most favorable to the party opposing that motion. *Doe,* 322 Or at 505.

■ The statute of limitations for accounting malpractice is two years. ORS 12.110(1); *Godfrey v. Bick & Monte,* 77 Or App 429, 432, 713 P2d 655, *rev den* 301 Or 165 (1986). An injury under ORS 12.110(1) means a legally cognizable harm consisting of three elements: (1) harm; (2) causation; and (3) tortious conduct. *Gaston v. Parsons,* 318 Or 247, 255, 864 P2d 1319 (1994). The statute begins to run

> "when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists."

*Id.* at 256. Establishing when the statute begins to run is an objective test, and the inquiry involves examining whether a reasonable person of ordinary prudence would have done as a plaintiff did in the same or similar circumstances. *Id.* A plaintiff's discovery of the injury includes discerning the defendant's negligence in causing the harm. *Godfrey,* 77 Or App at 432. To sustain the summary judgment for Miner, we must conclude that there is no genuine issue of material fact regarding Miner's knowledge. *Knight v. Rew,* 79 Or App 694, 697-98, 720 P2d 397, *rev den* 301 Or 445 (1986).

■ Sloan contends that two events occurring before March 22, 1992, caused plaintiffs to be aware of their injury. The first was Sloan informing Miner on March 6, 1992, of the $80,000 tax liabilities resulting from the trucking equipment

sales. The second was Miner contacting Davies on March 12, 1992, to discuss plaintiffs' tax liabilities.[2] Plaintiffs respond that they were not aware of their injury until they were informed by Davies on July 9, 1992, that the tax liability could have been avoided if Sloan's advice had not been negligent.

Sloan relies on *Godfrey* and *Bollam v. Fireman's Fund Ins. Co.*, 302 Or 343, 730 P2d 542 (1986), for his argument that plaintiffs knew of their injury before March 22, 1992, because they knew of their tax liabilities. In *Godfrey*, the plaintiff alleged that his attorney and certified public accountant were negligent in structuring a corporate stock transaction in a way that caused the plaintiff to incur substantial federal and state tax liabilities. The plaintiff received a notice from the IRS on December 19, 1979, that he owed additional taxes. On May 12, 1981, the plaintiff consulted with a different attorney regarding his tax problems. That attorney told the plaintiff about a possible professional malpractice action and that the statute of limitations on such an action was two years. Nonetheless, the plaintiff did not file a malpractice action against the defendants until January 4, 1984. *Godfrey*, 77 Or App at 432. We held that the "[p]laintiff had been damaged more than two years before commencement of the action when he incurred attorney and accounting fees in his attempt to resolve his IRS problems." *Id.* We reasoned that the plaintiff knew more than two years before he commenced his action that he had received negligent professional advice. *Id.* at 433-34.

In *Bollam*, the plaintiffs sued their insurance company for negligent management of a third-party's claim against them, alleging as damages the attorney fees they had expended to defend against that third-party's claim. The plaintiffs asserted that the insurance company should have known that making advance payments to the third party precluded the possibility of a settlement under the plaintiffs' policy limits. The Supreme Court held that the plaintiffs' action was time barred, because it was filed more than two years

---

[2] Sloan does not argue that plaintiffs knew that they were injured before March 22, 1992, because they were liable for penalties and interest resulting from the failure to pay $80,000 in taxes.

after the company had completed making the advance payments and the company's legal counsel had advised the plaintiffs that they should retain their own attorney to evaluate the third-party claim. *Bollam,* 302 Or at 353. The court explained that the plaintiffs knew that the insurance company's conduct had harmed them when they incurred attorney fees to handle their dispute with the third party. Because the plaintiffs were aware of the cause of their harm, *i.e.,* the need to defend the third-party claim, the statute of limitations began when the plaintiffs hired their own counsel. The running of the statute of limitations was not suspended until the third-party's claim against the plaintiffs was resolved. *Id.*

Sloan's reliance on *Godfrey* and *Bollam* is misplaced. Sloan's conversation with Miner on March 6, 1992, did nothing to alert Miner that the trucking equipment sales could have been structured to avoid tax liability. In his first consultation with Davies on March 12, 1992, Miner asked Davies only to verify that the trucking equipment sales had resulted in a tax liability of $80,000. Davies did so. Unlike the plaintiffs in *Bollam,* Miner did not know when he first sought advice from Davies that Sloan's negligence in failing to research and structure the trucking equipment sales transactions caused him the harm of tax liabilities that could have been avoided. Miner did not discover that information until July 9, 1992, when Davies so informed him. *See Fliegel v. Davis,* 73 Or App 546, 549, 699 P2d 674, *rev den* 299 Or 583 (1985) (the plaintiff's action was not time barred because there was no evidence that the plaintiff could have known that its attorneys' advice was negligent). *See also U.S. Nat'l Bank v. Davies,* 274 Or 663, 668, 548 P2d 966 (1976) (statute of limitations did not begin to run until underlying suit established that the plaintiff had received negligent legal advice).

Nevertheless, Sloan argues, when he admitted to Miner on March 6, 1992, that the trucking equipment sales yielded a tax liability of $80,000, plaintiffs "had reason to know of their claim sufficient to start the statute [of limitations] running by then." We understand Sloan's argument to be that, after he informed Miner of his mistake, Miner failed to pursue diligently whether he had a claim against Sloan.

The Supreme Court has held that:

> "In most cases, the inquiry will concern what a plaintiff should have known in the exercise of reasonable care. In such cases, the relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation. * * * Relevant to this analysis will be a plaintiff's failure to make a further inquiry if a reasonable person would have done so."

*Gaston*, 318 Or at 256 (citation omitted). Thus, we examine the circumstances of this case to determine whether a reasonable person would have acted as Miner did in pursuing this action against Sloan.

Sloan conceded in his deposition that Timber's financial problems in the spring of 1990 were dire.[3] Sloan told him there would be no tax consequences associated with selling some of the trucking equipment. On March 6, 1992, Sloan informed Miner of significant tax consequences from the sales. Four business days later, Miner sought professional advice from Davies to confirm the amount of taxes owed. According to Sloan, when Miner learned that he owed taxes he should have inquired of Sloan or Davies whether Sloan could have structured the sales in a tax-free manner. Additionally, Sloan suggests that a reasonable person would have made that inquiry sooner than Miner did.

We find those arguments without merit. Miner acted reasonably in first verifying that he owed $80,000 in taxes because of the trucking equipment sales. On the facts in this record, we cannot say that a reasonable person of ordinary

---

[3] In response to a question, Sloan stated:

"My feeling was they really needed the cash for the cash flow and, you know, it was an expensive way to get the cash, but yeah, back when I did the amended, I felt—you know, I didn't feel good, but I felt that it still was a good way to go."

Sloan responded as follows to a question about plaintiffs' financial straits at the time of the trucking equipment sales:

"Q. Your testimony has been that at the time it was your view based on your knowledge of the company's needs and financial situation that even if they had known of the—even if the company had known of the built-in gains tax, it would not have done anything different; is that right?

"A. That was my thinking, yes."

That evidence is uncontradicted.

prudence would know or should have known of Sloan's negligence before March 22, 1992. Miner did not know until July 9, 1992, of the harm caused by Sloan's professional malpractice: liability for taxes that could have been avoided. The trial court did not err in granting plaintiffs' motion for summary judgment.

Affirmed.