Argued and submitted January 7, affirmed June 10, 1998

Faith GASPAR,
*Appellant,*

*v.*

VILLAGE MISSIONS,
Pacific Community Church, Inc.,
and Tom Hutton,
*Respondents.*

(96CV-0185; CA A95713)

961 P2d 286

Robert C. Williamson argued the cause and filed the brief for appellant.

James C. Chaney argued the cause for respondent Village Missions. With him on the brief was Jaqua & Wheatley, P.C.

R. Daniel Lindahl argued the cause for respondents Pacific Community Church, Inc., and Tom Hutton. With him on the brief was Jaqua & Wheatley, P.C.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

In this action for negligence, intentional infliction of emotional distress, assault and battery, and clergy malpractice, plaintiff appeals a summary judgment granted in favor of defendants on the ground that the statute of limitations had run. We affirm.

Defendant Village Missions is the parent organization of defendant Pacific Community Church, whose pastor was defendant Hutton. In 1991, plaintiff, a 42-year-old resident of Bandon, met for spiritual guidance with Hutton following her brother's death. While meeting with Hutton, plaintiff suffered an anxiety attack, which Hutton interpreted as demon possession. Hutton asked plaintiff to return for treatment sessions—"deliverance" sessions—which she did from late February to early September 1992. At first, the sessions were once a week for six to eight hours; they increased to five and six times a week for up to 14 hours at a time. Hutton repeatedly told plaintiff that she was possessed by demons, suffered from multiple personality disorder, and had participated in satanic rituals such as human sacrifices, eating human flesh, and sexually deviant behavior. If she denied those claims, Hutton and his church recruits would scream, harass, badger and even slap or restrain plaintiff until she admitted the acts. Plaintiff began to believe that she was, in fact, demon possessed. Hutton told plaintiff that he was her only hope, that he was the only person in the area who knew how to treat her and that if she attempted to see a professional counselor, she would be locked up and her children taken away.

Plaintiff's mental condition deteriorated and, in September 1992, Hutton, apparently realizing that he could not help plaintiff, contacted a clinic in California. Plaintiff went to the clinic, where she was hospitalized for four days. After her release, she began counseling with Dr. Mallory, in whose care she remains. She did not again meet with Hutton.

Mallory diagnosed pla ;iff as suffering from post-traumatic stress disorder both · ·a result of childhood experiences and her mistreatment ˈlutton. Mallory explained that, by inducing a delusiona! ˈlief system in plaintiff in

which she believed she was involved in a satanic cult and had been taken over by discrete separate personalities, plaintiff's fragile coping mechanisms were destroyed. Mallory described plaintiff's "cognition" as vacillating between extremely short periods of limited perspective about her situation and her delusional state. In May 1994, plaintiff, believing that she was unworthy to live, attempted suicide and was again hospitalized for a week.

Plaintiff filed her action in February 1996. The trial court found that plaintiff's claims had not been brought within the two-year limitation of ORS 12.110(1) and granted defendants' motions for summary judgment. On appeal, plaintiff makes two assignments of error. She argues that the court erred because the record shows issues of fact as to whether the time for filing was tolled by her insanity until May 1995 and issues of fact as to whether she could have discovered that she had a claim before May 1995.

■■ We view the facts and inferences therefrom in the manner most favorable to plaintiff, the nonmoving party, to determine whether there is a genuine issue of fact and whether defendants are entitled to judgment as a matter of law. ORCP 47; *Jones v. General Motors Corp.*, 325 Or 404, 939 P2d 608 (1997). For purposes of ORS 12.110, an injury is a legally cognizable harm consisting of three elements: (1) harm; (2) causation; and (3) tortious conduct. *Gaston v. Parsons*, 318 Or 247, 255, 864 P2d 1319 (1994). The statute of limitations begins to run when a plaintiff knows, or in the exercise of reasonable care should have known, facts that would make a reasonable person aware of a substantial possibility that each of the elements exists. *Id.* at 256; *Timber By-Products v. Sloan*, 148 Or App 415, 419, 939 P2d 1177, *rev den* 326 Or 62 (1997).

In its written opinion granting defendants' motions for summary judgment, the trial court concluded:

"It is clear from the evidence presented by the parties that plaintiff knew in May of 1993 that defendant Hutton had committed a wrong against her. Dr. Mallory's notes demonstrate that plaintiff was aware of the wrong and was

angry about it in the fall of 1993. Further, Dr. Mallory's affidavit is contradictory. Putting aside that his affidavit contradicts the notes he made during his treatment sessions with plaintiff, the affidavit also contradicts the conclusions he draws from the facts upon which he relies and shows why plaintiff knew of her injury and was not insane in May, 1993. Dr. Mallory states, 'I felt a statement should be made to Pastor Hutton and to Village Missions as soon as I was able to obtain [plaintiff's] *informed permission,* and I took that step for her. In May, 1993 I wrote a letter to Village Missions expressing my concern over the things that had been done to [plaintiff] by Pastor Hutton. Prior to this date, [plaintiff] had been so fearful of Pastor Hutton that *she would not allow me to do this.* I felt it was an important step to take on behalf of my patient as soon as she was able to *consent* to it.' In [plaintiff's] deposition she agreed that she had consented to the letter being sent and had read it before it was sent.

"There is no difference between the consent a psychotherapist needs from his patient to write to someone about a wrong done to the patient and the consent an attorney needs to file a claim for relief against a person who committed a wrong against the attorney's client. They both require an understanding that a wrong happened, that it was caused by a particular person, and that harm resulted from the wrong. A person in plaintiff's position cannot exercise the type of control and consent demonstrated by the above portion of Dr. Mallory's affidavit and not be able to discover the wrong committed against her or be insane." (Emphasis trial court's; citation omitted.)

The record at the summary judgment stage here included, *inter alia,* portions of plaintiff's deposition and her summary judgment affidavit, Mallory's treatment notes and his affidavit, and a May 1993 letter from Mallory to Village Missions. In support of her arguments, plaintiff relies primarily on Mallory's affidavit. Defendants contend that the affidavit contradicts Mallory's earlier treatment notes, and, because the affidavit was prepared for summary judgment, it cannot be relied on to create issues of fact. *See Henderson-Rubio v. May Dept. Stores,* 53 Or App 575, 585, 632 P2d 1289 (1981) (where the plaintiff's affidavit directly conflicted with his deposition testimony and did not attempt to explain the inconsistency, affidavit did not raise any genuine issue of

fact). Plaintiff counters that Mallory's affidavit can be used because it explained his treatment notes. *See Taal v. Union Pacific Railroad Co.*, 106 Or App 488, 494, 809 P2d 104 (1991) (if there is explanation of inconsistencies between deposition statements and affidavit, it is not within province of court to disbelieve explanation for purposes of a summary judgment motion; it is a matter for the factfinder); *see also Stoeger v. Burlington Northern Railroad Co.*, 323 Or 569, 577, 919 P2d 39 (1996) (concerning effect of contradiction between statements from same person).

It is unnecessary for us to decide whether there is merit in defendant's argument based on *Henderson-Rubio.* Putting aside any contradictions—as did the trial court—we agree with the trial court that the evidence does not show issues of fact as to whether the statute of limitations had run.

■ Plaintiff argues that she presented evidence that was sufficient to create an issue of fact for the jury as to whether her mental condition was tolled by insanity. The gravamen of plaintiff's position is that she is seeking damages for psychological injury, and there is evidence from which the jury could conclude that that psychological injury is what prevented her from understanding her rights, except for transitory periods of lucidity.[1] In response, defendants point to numerous chart entries that they argue confirm that plaintiff was rational: She traveled by herself to the clinic in California and to Oregon City for counseling; she cared for her children and house; she chose to stop attending Hutton's church. They contend that those actions, considered with plaintiff's participation in sending the letter of complaint and her release of confidentiality for Mallory to send the letter, do

---

[1] Plaintiff contends that she has explained the event that precipitated that recognition: She telephoned Hutton, asking for his insight, and

"[w]hen he replied with a sarcastic comment, it was like a light bulb went on inside of me and I understood for the first time that the things he had told me—that I had [multiple personality disorder] and had been possessed by demons—were wrong. Prior to that I had been convinced by Pastor Hutton that these messages were from God. I had not understood that Pastor Hutton had deceived me. But after talking to him on the phone, I felt emotionally betrayed and knew that he had preyed on my religious belief and my trust in him."

"not reveal a mentally deranged person incapable of comprehending her rights" but, instead, depict "a fully functioning adult, capable of making deliberate rational choices."

Under ORS 12.160(2),[2] if a person is "insane" at the time a cause of action accrues, the "time of such disability shall not be a part of the time limited for the commencement of the action[.]" In *Roberts v. Drew*, 105 Or App 251, 804 P2d 503 (1991), we discussed the statute in addressing whether mental retardation was insanity for purposes of ORS 12.160(2). We noted that, although "insane" had been part of the statute since the mid-1800s, the term previously had not been defined. We cited the definition that had been applied to ORS 12.160(2) in *Hoffman v. Keller*, 193 F Supp 733, 735 (D Or 1961):

> " '[A]s used in statutes extending the time within which to commence an action, [insane] "has been held to mean such a condition of mental derangement as actually to bar the sufferer from comprehending rights which he is otherwise bound to know * * *." 54 CJS Limitation of Actions § 242.' " *Roberts*, 105 Or App at 254.

We concluded that the context of insanity was broad enough to include various mental conditions that have the requisite disabling effects, *id.*, and that the extent of the disabling effects of a mental condition is normally a question of fact for the jury. *Id.* at 255. Plaintiff argues here that Mallory had made a diagnosis that in plaintiff's "delusional state she was completely unaware of any damage done to her" by Hutton. Therefore, plaintiff contends, the trial court could not determine whether Mallory was correct or not.

Implicit in our discussion of insanity in *Roberts* is the recognition of the gradations of incapacity that a mental condition can cause. Nonetheless, for ORS 12.160(2) to toll the statute of limitation of ORS 12.110(1), plaintiff's mental condition must have been such as to have *actually barred* her from knowing that Hutton had harmed her. The difficulty with plaintiff's position is that Mallory's opinion does not show that her mental condition was disabling in the requisite

---

[2] The 1997 legislature amended ORS 12.160 in ways not relevant to this appeal. We refer to the statute as it read when this action was brought.

ways when that opinion is considered in the context of the entire summary judgment record. Instead, the record supports Mallory's affidavit statement that plaintiff suffered from "continued delusional beliefs about herself." The record shows that plaintiff continued to question whether she had actually done the things that Hutton had said she did. However, the record does not also show that plaintiff's uncertainty as to the reality of her past extended to an uncertainty that she had been injured.

The record shows that during an August 1993 treatment session, Mallory noted that plaintiff expressed her feeling that Hutton "is still out there hurting people and feeling much more like she needs to take some steps to stop him." Plaintiff and Mallory discussed taking "appropriate steps together," including writing to the church mission and to state agencies, as plaintiff needed to "take some steps to stop" Hutton. After the letter was written, plaintiff felt that the letter "helped her feel like she expressed herself" and that she felt "less a victim of the past since [she and Mallory] wrote a letter together of complaint."

Those notes reflect plaintiff's understanding that Hutton's treatment of her had affected her in negative ways and that she wanted redress for those effects. That understanding is even more evident in Mallory's May 1993 letter. In the opening paragraph, he states, "[Plaintiff] has signed a release of confidentiality and I am writing this letter on her behalf." The letter details "several things which caused [plaintiff] great harm," including "the message [P]astor Hutton gave to [plaintiff] that her memories and experiences were wrong," and states that plaintiff "is very concerned that others might be hurt in a similar manner as she was." Furthermore, Mallory's affidavit affirms that he "felt that a statement should be made to Pastor Hutton and to Village Missions as soon as I was able to obtain [*plaintiff's*] *informed permission*, and I took that step for her" in May 1993 when plaintiff "would allow [me] to do this." (Emphasis supplied.) As the trial court here recognized, there is a legal component in a consent to release of medical confidences: one must be competent to give that consent. We agree with defendants that the inference here is that, in seeking and accepting

plaintiff's consent, Mallory, a trained and experienced clinical psychologist, believed that she was capable of understanding her rights.

Indeed, plaintiff does not really contest that the record shows that she had an understanding of the harm done to her. Rather, she argues that Mallory's statement that her "cognition" was only for "extremely short periods of some limited perspective and judgment about the situation (a few hours or a day)" leaves issues of fact as to whether the statute of limitations was tolled. However, as noted, the evidence shows plaintiff's vacillation in dealing with her past, but it does not show that her understanding of Hutton's injurious treatment of her was likewise transitory. To the contrary, the evidence shows that, over a period of time, plaintiff, together with Mallory, considered how to confront Hutton's treatment of her and to prevent him from harming others and that she reflected on the salutary benefits once she acted. In short, and again in Mallory's words, the evidence shows that plaintiff suffered "continued delusional beliefs about *herself*" (emphasis supplied); the evidence does not show that she suffered from a delusion that she had not been injured. The trial court did not err in holding that ORS 12.160 had not tolled the statute of limitations.

■ Plaintiff next argues that the court erred in holding that she discovered her cause of action as early as 1993. When the statute of limitations begins to run is "an objective test. In most cases, the inquiry will concern what a plaintiff should have known in the exercise of reasonable care." *Gaston*, 318 Or at 256. Plaintiff contends that here her injury was psychological distress, which "masked" the causal connection between Hutton's action and her condition. Defendants argue that the discovery rule has never been applied to cases of this nature where, in the face of records "replete with references to actual knowledge of a claim," there is an argument that a "psychological syndrome" intervenes to prevent the running of the statute of limitations. Defendants also argue that, even if the discovery rule does apply, no objectively reasonable juror could find that plaintiff was ignorant of her cause of action.

Assuming, without deciding, that the discovery rule applies to all of plaintiff's claims,[3] the application of that doctrine does not assist plaintiff. Plaintiff's position in both her assignments is substantively the same: Her mental condition prevented her from understanding her legal rights. Plaintiff's first assignment of error, thus, necessarily subsumes the second. In other words, just as the evidence shows that plaintiff's mental condition did not actually bar her from comprehending her rights no later than May 1993, plaintiff "discovered" her claims no later than that date.

Affirmed.

---

[3] Plaintiff argues that she seeks damages for psychological distress for all her claims, including assault and battery, and that all are subject to the discovery rule. Defendants do not argue that some, but not others, of plaintiff's claims are not subject to the rule.