Argued and submitted August 17, 2020; reversed and remanded as to plaintiff Monica Thompson's claim for negligent infliction of emotional distress, otherwise affirmed February 3, 2021

Estate of Jacob Thompson,
by and through its Personal Representative,

Monica THOMPSON;
Monica Thompson, an individual; and
Graham Thompson, an individual,
*Plaintiffs-Appellants,*

*v.*

PORTLAND ADVENTIST MEDICAL CENTER,
a domestic corporation,
*Defendant-Respondent,*

*and*

NURSE X,
an individual of unknown name,
*Defendant.*

Multnomah County Circuit Court
17CV33591; A169299

482 P3d 805

Plaintiffs, parents of a child who accidentally suffocated in the hospital soon after his birth, brought three claims against the hospital and an unknown nurse: Mother brought a claim for negligence in her capacity as personal representative of the child's estate and brought a claim for negligent infliction of emotional distress (NIED) in her personal capacity, and father brought a claim for NIED. The trial court granted summary judgment to defendants for all three claims, concluding that they were barred by the statute of limitations. On appeal, plaintiffs assign error to the trial court's grant of summary judgment and argue that a reasonable factfinder could have determined that all three claims were timely. *Held*: The trial court erred in granting summary judgment for mother's NIED claim. Viewed in the light most favorable to plaintiffs, there is a triable question of fact about whether mother had a disabling mental condition that tolled the limitations period pursuant to ORS 12.160. However, the trial court did not err in granting summary judgment on either the estate's or father's claim: Mother did not become personal representative of the estate until after the statute of limitations had elapsed, so no claim remained for mother's mental condition to toll, assuming that it could have done so, and father's claim was extinguished by the statute of ultimate repose.

Reversed and remanded as to plaintiff Monica Thompson's claim for negligent infliction of emotional distress; otherwise affirmed.

Karin Johana Immergut, Judge.

Nadia Dahab argued the cause for appellants. Also on the briefs were Stoll Berne Lokting & Shlachter P.C.; and Diego Conde and Conde Law Group PC.

Janet M. Schroer argued the cause for respondent. Also on the brief was Hart Wagner LLP.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded as to plaintiff Monica Thompson's claim for negligent infliction of emotional distress; otherwise affirmed.

**KAMINS, J.**

In the early morning hours of August 6, 2012, four-day-old Jacob Thompson accidentally suffocated under his mother Monica Thompson's breast while sleeping in the same bed at the hospital maternity ward. Almost five years later, Monica brought a claim for negligence against the hospital and an unknown nurse as personal representative of Jacob's estate. She also brought a claim for negligent infliction of emotional distress (NIED) in her own personal capacity. One month later, the complaint was amended to add an additional NIED claim by Graham Thompson, Jacob's father. The trial court granted summary judgment on all three claims, concluding that they were barred by the statute of limitations. Plaintiffs appeal, arguing that a reasonable finder of fact could have determined that their claims were timely.

We conclude that the trial court erred in granting summary judgment on Monica's NIED claim. Viewed in the light most favorable to plaintiffs, there is a triable question of fact about whether Monica had a disabling mental condition that tolled the limitations period pursuant to ORS 12.160.[1] However, we conclude that the trial court did not err in granting summary judgment on either the estate's or Graham's claim and reject plaintiffs' arguments relating to both with only minimal discussion.[2] Accordingly, we reverse.

---

[1] In addition to her argument under ORS 12.160, Monica advances two other arguments as to why her NIED claim was timely. We reject both arguments without discussion.

[2] Plaintiffs argue that, as personal representative of Jacob's estate, Monica's mental disability tolled the limitations period for the estate's claim pursuant to ORS 12.160. Assuming, without deciding, that a personal representative's mental condition could toll the statute of limitations on a claim by an estate, the judgment admitting Jacob's estate to probate—which we take judicial notice of—indicates that Monica was not appointed as Jacob's personal representative until August 2017. *See Eklof v. Steward*, 360 Or 717, 722 n 4, 385 P3d 1074 (2016) (taking judicial notice of trial court register pursuant to OEC 201(b)(2) because register's accuracy could not reasonably be questioned). Because ORS 30.075's three-year limitations period had already elapsed by that point, no claim remained for Monica's mental condition to toll. Likewise, we conclude that Graham's NIED claim was extinguished by the running of ORS 12.110(4)'s five-year statute of ultimate repose. *See Cannon v. Oregon Dept. of Justice*, 288 Or App 793, 799, 407 P3d 883 (2017), *rev den*, 362 Or 860 (2018) ("When the ultimate repose period has expired, the claim is extinguished and no legally cognizable injury exists.").

## I.   STANDARD OF REVIEW

We review a trial court's grant of summary judgment for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law. *Buchwalter-Drumm v. Dept. of Human Services*, 288 Or App 64, 66, 404 P3d 959 (2017). "No genuine issue as to a material fact exists if \* \* \* no objectively reasonable juror could return a verdict for the adverse party[.]" ORCP 47 C. In evaluating whether summary judgment is appropriate, we view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences therefrom in that party's favor. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). We state the facts in accordance with that standard.

## II.   BACKGROUND

On August 5, 2012, three days after giving birth to her son Jacob via caesarian section, Monica Thompson was cleared for discharge the following day from Portland Adventist Medical Center. Because Monica wanted to be well rested for her first day at home with her son, at approximately 10:35 p.m. hospital staff provided her with sleeping medication. In addition to the sleeping medication, Monica was also provided regular doses of narcotic painkillers to manage the pain from her surgery, including one at 11:50 p.m.

On the morning of August 6 at approximately 3:10 a.m., a nurse brought Jacob in to breastfeed, handed him to Monica, and then left the two alone. Approximately one hour later, Monica woke up to find Jacob unresponsive after having suffocated under her breast. Although doctors were able to successfully restart Jacob's heart, they concluded that he had suffered severe, permanent brain damage and recommended taking him off of life support. In the early morning hours of August 12, Jacob passed away.

Following Jacob's death, Monica returned to her clerical job in the funeral industry. All the while, however, she experienced intense feelings of grief and guilt, believing herself to have been responsible for Jacob's death. In particular, Monica felt that she was responsible because she

had signed a policy form at the hospital specifically prom-
ising that she would not sleep in the same bed as her baby.
To help her process these feelings, Monica started seeing
a therapist who treated her for grief, post-traumatic stress
disorder (PTSD), and major depressive disorder. She also
began attending a grief support group. Monica participated
in therapy and the grief support group until August 2013,
when she decided to take a break after becoming pregnant
with her second child.

In 2016, Monica resumed therapy with a new ther-
apist. According to that therapist, Monica was still experi-
encing severe symptoms, including "psychological distress,
*** prolonged and serious functional impairment, distorted
sense of blame, *** and memory problems exclusive to
the event." The therapist remarked that Monica's grieving
process was the most "intense and lasting" that she had
observed in her career.

In the summer of 2017, during a therapy session,
Monica and her therapist discussed the possibility of talking
with a lawyer about any legal rights Monica might have.
That led Monica to meet with a lawyer for the first time on
August 1. Three days later, Monica filed a claim for NIED
against both the hospital and the unknown nurse who left
her son with her.

Before the trial court, defendants moved for sum-
mary judgment, arguing that the limitations period on
Monica's claim had run before she filed her complaint. In
response, Monica argued that her claim was timely because
her grief, depression, and PTSD amounted to a disabling
mental condition under ORS 12.160 which, until recently,
had prevented her from understanding her legal rights. The
trial court granted summary judgment, concluding that the
facts of record were legally insufficient to toll the limitations
period.

On appeal, Monica argues that the trial court erred
in granting summary judgment because the facts of record
would have permitted reasonable jurors to conclude that she
had a disabling mental condition that tolled the limitations
period. For the reasons that follow, we agree that a triable

issue of fact exists about whether Monica's NIED claim was tolled under ORS 12.160.

## III.   ANALYSIS

ORS 12.160(3) provides that, if a person has a "disabling mental condition that bars the person from comprehending rights that the person is otherwise bound to know, the statute of limitation for commencing the action is tolled for so long as the person has [that condition]." Critically, to toll the limitations period, a plaintiff's mental condition "must have been such as to have *actually barred* her from knowing that [the defendant] had harmed her." *Gaspar v. Village Missions*, 154 Or App 286, 292, 961 P2d 286 (1998) (emphasis in original). Whether a plaintiff's mental condition was severe enough to amount to such a bar is a question of fact. *Roberts v. Drew*, 105 Or App 251, 255, 804 P2d 503 (1991).

Defendants argue that the trial court properly granted summary judgment because no objectively reasonable juror could have concluded that Monica was unable to understand that defendants had harmed her. They argue that Monica's therapy records indicate on several occasions that she was angry with both the unknown nurse and the hospital for causing her son's death. Specifically, on April 2, 2013, Monica's therapy records indicate that during the session Monica expressed that she was feeling "angry toward hospital re: baby's death." Likewise, Monica's session notes from June 11, 2013, reflect that she shared that the leader of her grief group had "validated [Monica's] feelings re: nurse/hospital responsibility [and Monica's] right to complain." Taken together with contextual information—like the fact that Monica was able to function at work and provide childcare for her daughter and two other children—defendants argue that the record is insufficient as a matter of law to support a conclusion that Monica was unaware of her legal rights.

In response, Monica argues that a genuine issue of material fact exists about the meaning of the notes in her therapy records. She contends that not all reasonable jurors would have to interpret the notes to suggest that she was aware that defendants had harmed her. Beginning

with Monica's April 2, 2013, therapy records, in addition to describing the feelings of anger that Monica expressed during her session, the records contain a section labelled "Progress/Client Response/Assessment." Under that section, Monica's therapist left a note that Monica had reached the "'Angry' Stage" of her grieving process. Because the note describes Monica's anger as part of a more generalized "stage" rather than the result of specific feelings directed toward defendants, it is arguable that Monica's anger was not evidence of an understanding of defendants' culpability.

Likewise, although Monica's June 11, 2013, therapy records describe a grief group where she shared her feelings about the nurse and hospital's responsibility and her right to complain, the same record also indicates that the grief group leader "challenged [Monica's] taking of 100% responsibility." A reasonable reading could emphasize that portion of the record in interpreting the rest. So emphasized, the rest of the record could be understood to mean that, although Monica did describe her "feelings re: nurse/hospital responsibility [and] right to complain," Monica's feelings were that the hospital was *not* responsible and that she had *no* right to complain. Indeed, such an interpretation would square with Monica's repeated assertions that, because she signed a policy form promising not to co-sleep with her baby, she believed that it had been incumbent upon her—not defendants—to prevent this tragedy.

Although it is a close call whether Monica's therapy notes raise a genuine issue of material fact when considered on their own, we conclude that the notes do raise such an issue when considered together with another critical piece of evidence: plaintiffs' declaration about expert testimony. In opposing defendants' motion for summary judgment, plaintiffs submitted a declaration pursuant to ORCP 47 E stating that they have retained an expert qualified to testify about the impacts that "[PTSD], depressive disorders, bereavement, and cognitive impairments" have on the "mental process of comprehension, judgment, memory, and reasoning" of both individuals in general and Monica in particular. Under ORCP 47 E, a party that is "required" to produce expert testimony in opposing a motion for summary judgment can

effectively controvert the moving party's allegations by submitting a declaration stating that the party has retained a qualified expert whose testimony at trial will create a genuine issue of material fact. Expert testimony is "required" if "the issues raised in the defendant's motion are not within the knowledge of the ordinary lay juror." *Hinchman v. UC Market, LLC*, 270 Or App 561, 569, 348 P3d 328 (2015) (internal quotation marks omitted).

Here, in evaluating Monica's therapy notes, the jury would be required to assess the impact that Monica's various mental conditions—including PTSD, depression, and grief—had on her basic cognitive abilities. Because such a determination exceeds the knowledge of an ordinary lay juror, it would require the assistance of expert testimony. *See Whalen v. American Medical Response Northwest*, 256 Or App 278, 290, 300 P3d 247 (2013) (concluding that determining whether the plaintiff's amnesia was the result of inappropriate contact by defendant required expert testimony because it was beyond the knowledge of a lay juror). Accordingly, plaintiffs' declaration stating that they would provide such testimony at trial was sufficient to create a triable issue of fact under ORCP 47 E and prevent summary judgment. *See, e.g.*, *Two Two v. Fujitec America, Inc.*, 355 Or 319, 332-33, 325 P3d 707 (2014) (concluding that the plaintiffs' affidavit stating that they had retained a qualified expert was sufficient alone to preclude summary judgment when it could be interpreted to address all points raised in the defendant's motion).

Although defendants compare this case to *Gaspar*, that reliance is misplaced. In *Gaspar*, the plaintiff developed severe PTSD as the result of physical and psychological abuse by a religious advisor. 154 Or App at 288. Three and a half years later, the plaintiff brought suit against the advisor, arguing that her PTSD had tolled the statute of limitations under ORS 12.160 by preventing her from understanding her legal rights. *Id.* at 289.

We rejected the plaintiff's argument, explaining that her psychologist's notes clearly reflected that the plaintiff understood that "[the defendant's] treatment of her had affected her in negative ways and that she wanted redress

for those effects." *Id.* at 293. In his notes, the psychologist indicated that the plaintiff had expressed concern that the advisor was "still out there hurting people" and felt "like she need[ed] to take some steps to stop him." *Id.* The psychologist described how, with the plaintiff's consent, he had drafted a letter to the advisor explaining the harm that the advisor had done and how the plaintiff was concerned that "others might be hurt in a similar manner as she was." *Id.* The psychologist explained that participating in drafting the letter helped the plaintiff "feel like she expressed herself" and "less a victim of the past." *Id.* Because the plaintiff had a clear and targeted understanding of who was to blame—so much so that she participated in writing a letter to the wrongdoer to vindicate her rights—we explained that no reasonable juror could have concluded that she had been unaware of her legal rights. *Id.* at 295.

Here, in apparent contrast to *Gaspar*, plaintiffs submitted a declaration stating that they intended to prove Monica's disability via expert testimony at trial. As discussed above, that declaration is sufficient to create a genuine issue of material fact under ORCP 47 E. Additionally, unlike in *Gaspar*, Monica's therapy notes are ambiguous as to whether she understood that defendants had harmed her or whether she wanted redress. Although the notes reflect the fact that Monica experienced anger, they do not directly identify the target of that anger nor do they indicate a belief that Monica was a "victim" of defendants' wrongdoing.

## IV.   CONCLUSION

In sum, we conclude that the record contains a genuine issue of material fact about whether Monica had a disabling mental condition that tolled the statute of limitations pursuant to ORS 12.160. Accordingly, we conclude that the trial court erred in granting summary judgment on her NIED claim.

Reversed and remanded as to plaintiff Monica Thompson's claim for negligent infliction of emotional distress; otherwise affirmed.